FILED

Bijan Esfandiari, Bar No. 223216
besfandiari@baumhedlundlaw.com
Mark Schlein, FL Bar No. 000700
mschlein@baumhedlundlaw.com
(*Pro Hac Vice* to be submitted)
BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Tel: 310-207-3233
Fax: 310-207-4204

*Attorneys for Relator Linda DiBenedetto*

2019 MAY 29 PM 2:40

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY: _____

PAID

MAY 29 2019

Clerk, US District Court
COURT 4612

L/N

N c
CV-30

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

UNITED STATES OF AMERICA,

*ex rel.* LINDA DIBENEDETTO,

PLAINTIFF AND RELATOR,

v.

NAVIDE VAHEDI, PHARM.D, FUSION IV PHARMACEUTICALS, INC. d/b/a FUSION RX COMPOUNDING PHARMACY and FUSION IV SPECIALTY PHARMACY, JOSEPH KIEFFER, SAMANTHA BAUMAN, BRIAN PODOLAK, PETER l/n/u, JOHN DOE 1-15, AND JANE DOE 1-15,

DEFENDANTS.

CIVIL ACTION NO.

CV19-04666-JAK-GJSx

FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

FILED IN CAMERA AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

DO NOT PLACE IN PRESS BOX DO NOT ENTER ON PACER

Linda DiBenedetto ("Relator") brings this action on behalf of the United States of America ("United States") for treble damages and civil penalties arising from the conduct of Defendants Navide Vahedi, Pharm.D, (hereinafter referred to as "Vahedi") Fusion IV Pharmaceuticals, Inc. d/b/a Fusion Rx Compounding Pharmacy and Fusion IV Specialty Pharmacy (hereinafter referred to as "Fusion Rx"), Joseph Kieffer, Samantha Bauman, Brian Podolak, Peter l/n/u, John Doe 1-15 and Jane Doe 1-15 (collectively referred to as "defendants"), in violation of the Federal Civil False Claims

Act, 31 U.S.C. § 3729, et seq. ("FCA").  The violations arise out of false claims for payment made to TRICARE, Medicare, Medicaid and other federally funded government healthcare programs (hereinafter collectively referred to as "Government Healthcare Programs").

1.     Defendants, led by Navide Vahedi, the principal ringleader,  have defrauded government healthcare programs for tens of millions of dollars by illegally billing prescriptions and abusing patients' needs for pain and other medications.

2.     The scheme primarily involves the illegal prescribing of "compounded medications" to military veterans and the elderly suffering from an assortment of ailments.  Physicians and Physician Assistants[1] throughout the United States were recruited by "marketers" hired, paid and directed by Vahedi and Fusion Rx to solicit medical providers to prescribe enormously expensive compounded medications for government healthcare program beneficiaries, marketers' family members which were in many cases medically unnecessary and for nonexistent patients.

3.     Joseph Kieffer, Brian Podolak, Samantha Bauman, and Peter l/n/u were some of the marketers (also called "sales representatives" or "reps") paid by Fusion and Vahedi to solicit and refer patients and prescribers and to pay kickbacks to the prescribing providers.  Kieffer and Peter l/n/u helped Vahedi coordinate the army of sales reps that were deployed.

4.     The marketers also provided Vahedi and Fusion Rx with false prescriptions, paperwork and other documents to facilitate the fraud.  The marketers, Vahedi and Fusion Rx knew that these materials were forged/fabricated and fraudulent.

5.     In general, compounding is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to

---

[1]  The names and other relevant data concerning these physicians/physician assistants are provided in Relator's Disclosure Memorandum.

create a medication tailored to the needs of an individual patient.[2]  Permitting the use of compounded drugs is essential to those individuals who have allergies to the ingredients or dyes in certain prescription medications, cannot swallow pills or those that have unique needs.

6.      Compounded drugs are not Food and Drug Administration approved.  This means that the FDA does not verify the safety, or effectiveness of compounded drugs. It also provides wide opportunity for criminal activity in the processing, prescribing, mailing, billing and sale of these drugs.

7.      One of the largest growing areas of prescription fraud in the United States involves "compounded" pharmaceuticals.  The products made by compounding pharmacies, which mix pharmaceutical and prescription ingredients to meet specialized medical needs, are not as tightly regulated as mass-market drugs.  Compounded creams frequently are not approved by the Food and Drug Administration because they are mixed in very limited amounts and it is considered impractical to test all the variations.[3]

8.      Compounded drugs make up 1 to 3 percent of the $300 billion domestic prescription drug market.[4]

9.      According to Defense Department data, TRICARE paid $1.75 billion for compounded drugs, including creams, during the 2015 fiscal year that ended in September—eighteen times the amount paid three years earlier.[5]  Other federal healthcare agencies also paid significant amounts for compounded drugs.  Medicare Part D costs for compounded medications increased 625% between 2006 and 2015.  This increase was more than 56% in 2015 alone, costing taxpayers more than $182 million

---

[2]
http://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/PharmacyCompounding/ucm339764.htm#what
[3] http://www.wsj.com/articles/u-s-probes-possible-fraud-linked-to-compounding-creams-1454790501
[4] http://www.gao.gov/assets/670/666463.pdf
[5] See footnote 2.

dollars.[6] Express Scripts, a third party processor for both Medicare and Medicaid reported substantial increases in compound drug prescriptions in 2015.[7]

10.     Under federal law, compounding pharmacies do not have to prove the efficacy or safety of their products.  The industry is primarily regulated by the states, which exercise varying degrees of scrutiny.

11.     While in recent years TRICARE has attempted to close loopholes in  the compounded drugs arena, extensive fraud continues in TRICARE and other government healthcare programs.[8]  Despite health-related issues, fraud and other concerns, Medicare Part B and D continue to cover compounded drugs in many situations.  Medicaid also covers compounded medications.[9]

# I.     BACKGROUND

12.     For more than nine  years, and continuing to the present, Defendants have caused hundreds of thousands of false claims to be made on government healthcare programs.  Defendants accomplished this in several ways including, but not limited to:

- Knowingly soliciting and referring medical providers who prescribed "compounded" substances that were ordered from Defendants Vahedi and Fusion Rx in exchange for kickbacks and other financial benefits;

- Fusion Rx and Vahedi marketed their "compounding pharmacy" through a group of purported sales representatives who solicited prescription referrals by paying bribes and kickbacks to physicians, practices, physician assistants and others who were in a position to prescribe compounded medications to government healthcare beneficiaries.  Fusion Rx paid these

[6] https://oig.hhs.gov/oei/reports/oei-02-16-00290.pdf .
[7] http://lab.express-scripts.com/lab/drug-trend-report (Medicare PDF)
[8] http://www.military.com/daily-news/2016/06/09/report-troops-duped-in-alleged-TRICARE-fraud.html
[9] http://pharmacy.about.com/od/Insurance/a/Medicare-And-Drug-Compounding.htm

kickbacks but attempted to disguise its involvement by having the sales representatives and/or marketing fronts make the actual payments.

- Fusion Rx and Vahedi sought reimbursement for these medications which cost the government between twelve thousand dollars ($12,000.00) to more than forty-five thousand dollars ($45,000.00) *each*;
- Fusion Rx and Vahedi, in part through their sales representatives and "marketers," billed government healthcare programs for medications that were not medically necessary, by forging prescriptions, and by billing for nonexistent patients (customers).

Fusion Rx and Vahedi also defrauded government healthcare agencies by, upon information and belief, failing to collect co-payments from patients (customers).

## II.   FEDERAL JURISDICTION AND VENUE

13.   The acts proscribed by 31 U.S.C. § 3729 *et seq.*, and complained of herein occurred in the Central District of California.  Defendant has two closely located business offices.  One retail pharmacy is located at 1990 Westwood Blvd. Suite 135, Los Angeles, California, 90025.  A second related business is located at 2001 Westwood Blvd., Suite A, Los Angeles, California, 90025.  Upon information and belief, Navid Vahedi resides in Santa, Monica, California.  The acts alleged in this complaint were committed in this district.  Therefore, this Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732 (a), as well as under 28 U.S.C. §1345.

14.   Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because Defendants Vahedi and Fusion Rx do business at 1990 Westwood Blvd. Suite 135, Los Angeles, California, 90025 and 2001 Westwood Blvd., Suite A, Los Angeles, California, 90025.  The Defendants transact business in the Central District of California where the drugs are compounded, mailed, ordered and sometimes prescribed and all or most of the acts and omissions proscribed by 31 U.S.C. §3729 *et seq.,* occurred in this State.

15.     This court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 and has personal jurisdiction over Defendants Fusion Rx and Vahedi and the out of state defendants because each of them does business in the Central District of California.

16.     The facts and circumstances alleged in this complaint have not been publicly disclosed in a criminal, civil or administrative hearing, nor in any congressional, administrative, or government accounting office report, hearing, audit investigation, or in the news media.

17.     Relator Linda DiBenedetto is an "original source" of the information upon which this complaint is based, as that term is used in the False Claims Act.

## III.   PARTIES

18.     The United States funds the provision of medical care through Government Healthcare Programs such as Medicare, Federal Employees' Health Benefits Program, TRICARE/CHAMPUS, CHAMPVA, and other agencies and programs, acting through the Centers for Medicare & Medicaid Services ("CMS") within the U.S. Department of Health and Human Services ("HHS"), the Department of Defense, and other federal agencies.

a.  TRICARE provided healthcare coverage for Department of Defense beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

b.  Individuals who received healthcare benefits through TRICARE were referred to as TRICARE beneficiaries.  The defense Health Agency, an agency of the Department of Defense, was the military entity responsible for overseeing and administering the TRICARE program.

c.  TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, that were medically necessary and prescribed by a licensed physician.  Express Scripts, Inc. administered TRICARE's prescription drug benefits.

d.  TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies.  If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy.  To become a TRICARE network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws. Specifically including those addressing fraud, waste and abuse.

e.  Upon information and belief, Fusion Rx was a TRICARE network pharmacy provider submitting millions of dollars in claims to TRICARE for reimbursement between 2009 and 2019.

f.  MEDICARE provided benefits to individuals who were 65 years and older of disabled.  Medicare was administered by the Centers for Medicare and Medicaid services, a federal agency under the United States Department of Health and Human Services.

g.  Individuals who qualified for MEDICARE benefits were referred to as Medicare "beneficiaries".  Each beneficiary was given a unique health insurance claim number.  Healthcare providers who provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

h.  To participate in MEDICARE, a provider was required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations.  If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for processing and payment of claims.

i.  A healthcare provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services and products provided to Medicare beneficiaries.

j.  Most MEDICARE providers submitted their claims electronically pursuant to an agreement they executed with Medicare in which the providers agreed that they: (a) were responsible for all claims submitted to Medicare by themselves, their employees, and their agents; (b) would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) would submit claims that were accurate, complete, and truthful.

k.  MEDICARE part D provided coverage for outpatient prescription drugs. Medicare beneficiaries were able to obtain Part D coverage through: (1) enrollment in one of the many prescription drug plans, which covered only prescription drugs and were offered by qualified private insurance plans (also called drug plan "sponsors") which received reimbursement from Medicare; or (2) a Medicare Advantage plan that covered both prescription drugs and medical services.  A beneficiary was responsible for any deductible or co-payment required under his or her prescription drug plan.

l.  Medicare reimbursed providers for certain compounded drugs that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician or a qualified physician's assistant acting under the supervision of a physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular service or product would be reimbursed by Medicare.

m. Upon information and belief, Fusion Rx was a MEDICARE pharmacy provider submitting millions of dollars in claims to Medicare for reimbursement between 2009 and the present.

n.  The Federal Employees' Compensation Act ("FECA") , Title 5, United States Code, Sections 8101, et seq. provided certain benefits to civilian employees of the United State, for wage-loss disability due to a traumatic injury or occupational disease sustained while working as a federal employee under the FECA program.

o.  The Office of Workers' Compensation Programs, a component of the Department of Labor administered the FECA program, which was a federal workers' compensation program focused on return to work efforts and was not a medical insurance or retirement plan.

p.  When a qualified employee suffered a work-related injury, the employee filed a claim for coverage with the Office of Workers' Compensation Programs ("OWCP") which then assigned a claim number to the claimant.

q.  To obtain reimbursement for prescription drugs provided to OWCP claimants ("beneficiaries"), a pharmacy had to submit its prescription claims for payment to OWCP, using the beneficiary's OWCP claim number.  By submitting a claim for reimbursement with OWCP, the pharmacy provider certified that the service or product for which reimbursement was sought was medically necessary, appropriate, and properly billed in accordance with accepted industry standards.

r.  OWCP would process the claims submitted by the provider, and if all required information was included, OWCP would reimburse the provider in accordance with an established fee schedule.

s.  Upon information and belief, Fusion Rx submitted millions of dollars in claims to OWCP between 2009 and present  under the FECA program for compounded pain medications, for which OWCP paid Fusion Rx.

t.  TRICARE, Medicare and the FECA program were "Federal Healthcare Programs" as defined by 42 U.S.C. §1320a-7b(f), that affected commerce. Pharmacy providers were prohibited from using personal healthcare

information, which included a patient's name, date of birth, TRICARE number, Medicare HICN, or OWCP claim number, and other healthcare information, without the patient's knowledge and consent.

19.     Relator Linda DiBenedetto is a citizen of the United States and a resident of the State of California.  Relator performed an audit at the request of Vahedi for Fusion Rx to attempt to reclaim payments that were disallowed.  During the course of that audit Relator learned of the fraud perpetrated by Defendants and reported this information to federal investigators.  Relator's cooperation with federal investigators included providing large numbers of documents and records, making monitored phone calls and helping to place an undercover operative in the defendant's organization.  Relator continues to assist federal agents in their ongoing investigation of these defendants.  Based on the evidence provided by the Relator and as the result of her continued cooperation, it is anticipated that the criminal investigation regarding these allegations will be completed shortly and charges filed.

20.     Fusion IV Pharmaceuticals, Inc. is a pharmacy located at 2001 Westwood Blvd., Suite A, Los Angeles, CA 90025, within the Central District of California.  This company does business as Fusion Rx Compounding Pharmacy and Fusion IV Specialty Pharmacy.  Fusion Rx operates primarily as a multi-state mail order pharmacy with the vast majority of its revenue derived from mail order prescriptions and prescription refills, primarily consisting of compounded pain medications many of which are billed to TRICARE, Medicare and other governmental heath care programs.  Very few of Fusion Rx customers live within a twenty-mile radius of Fusion Rx's storefront location.

21.     Defendant Navid Vahedi is a pharmacist licensed in the state of California under license 53726 and owns and operates Fusion Rx and Fusion IV Specialty Pharmacy and has done so since approximately 2009.  Shortly after opening the Pharmacy, Vahedi began recruiting independent contractors to "market" and "sell" his compounded medications to physicians on behalf of their patients.

22.     Samantha Bauman, Brian Podolak, Joseph Keiffer, and Peter l/n/u (last name unknown) are among an army of sales representatives ("sales reps" also known as "marketers) who serve as intermediaries between the physicians, physician assistants and medical practices and Vahedi/Fusion Rx.  These Defendants make the contacts between themselves and the medical providers (and sometimes directly with patients), pay kickbacks, procure prescriptions and otherwise facilitate the fraud by connecting prescribers with Fusion Rx and then obtaining funds from Fusion Rx to pay kickbacks to the prescribers that were solicited.  Peter l/n/u and Joseph Kieffer coordinated the work of many of the marketers at the direction of Navide Vahedi.  Although Peter l/n/u was regularly physically present and seen by the Relator at the Fusion Rx office, he would not provide his last name to Relator.  Relator is personally aware of Peter's interaction with Vahedi and other marketers in furtherance of the fraud.

23.     John Doe 1-15 and Jane Doe 1-15 include other marketers, the physicians and physician assistants who actively engaged with Fusion Rx, its sales representatives and/or the other defendants to defraud government healthcare programs.  The names of these defendants will be added as they become known.

## V.     SUBSTANTIVE CLAIMS

24.     Relator repeats and re-alleges each allegation contained in paragraphs 1 through 23, above as if fully set forth herein.

25.     Beginning on or about January 1, 2009 and continuing to the present in Los Angeles County, within the Central District of California and elsewhere, the defendants knowingly and willfully solicited remuneration or received remuneration in return for referring individuals to Vahedi and Fusion Rx for the furnishing or arranging for the furnishing of prescription medications which were reimbursed in whole or in part under federal healthcare programs in violation of various federal statutes, including but not limited to 42 U.S.C. § 1320a-7b(b)(2)(A ) and the False Claims Act.

26.     These Defendants, and each of them, knowingly and willfully offered to pay or paid remuneration to doctors and other persons to induce these individuals to

refer customers to Vahedi and Fusion Rx and participated in an illegal and fraudulent scheme for the furnishing or arranging for the furnishing of prescription medications paid for in whole or in part under a federal health program, in violation of 42 U.S.C. §1320a-7b(b)(2)(A) and other federal and state laws including the False Claims Act.

27.   Fusion Rx and Vahedi, and their co-conspirators would make illegal and undisclosed payments in connection with the prescription of compounded pain medications and other compounded pharmaceuticals to beneficiaries.  These payments would include: (1) payments from Fusion Rx to "marketers" (also known as "sales reps") in exchange for referring beneficiaries and their prescriptions for compounded pain and other medications to Vahedi and Fusion Rx; and (2) payments from Fusion Rx to physicians and physician assistants, either directly or through their "sales reps", in exchange for prescribing certain compounded pain and other medications to beneficiaries for dispensing at Fusion Rx.

28.   In an attempt to disguise the illegal nature of the payments from Fusion Rx to "sales reps" and prescribing physicians/physician's assistants, Vahedi and other defendants would:

    a.   form marketing companies and use them to pay "sales reps" and prescribing physicians referral fees for steering compounded medication prescriptions for TRICARE and other government programs  to Fusion Rx;

    b.   Fusion Rx would pay the referral fees to "sales reps" and disguise the payments as commission fees under sham marketing agreements;

    c.   The sham marketing agreements entered into between Fusion Rx (or its sham marketing companies) and various "marketers" would falsely purport to be "for the purpose of providing information to the community concerning compounded drugs on behalf of a group of pharmacies", when, in reality, the agreements were exclusively for the referral of compounded medication prescriptions to a single pharmacy, namely, Fusion Rx;

    d. Provided for payment to marketers of a significant percentage of the gross revenue received by Fusion Rx based on prescriptions referred by the marketers to Fusion Rx and subsequently claims submitted to and reimbursed by government healthcare programs;

    e. Used the sales reps as "pass throughs" to make payments to physicians and physician assistants of kickbacks and "commissions."

29. In exchange for the referral fees ("commissions") offered by Fusion Rx, the "marketers" (including, but not limited to, defendants Joseph Keiffer, Samantha Bauman, Brian Podolak and Peter l/n/u):

    a. Would solicit physicians (and physician assistants) to authorize prescriptions for compounded medications, including pain medications for beneficiaries; and

    b. Would provide prescribing physicians with pre-printed prescriptions for compounded pain and other medication combinations specifically selected to maximize the amount of money federal healthcare benefit programs, particularly TRICARE, would reimburse for each prescription (based on established reimbursement schedules), without any regard for the medical necessity of the prescription.

30. The prescribing physicians and physician assistants would typically authorize the pre-printed prescriptions provided by the defendants: (1) with no prior physician/patient relationship with the beneficiaries; (2) without the knowledge of the purported beneficiaries; (3) for their family members; (4) for sales reps and their families; and (5) without considering whether an FDA-approved (i.e. non-compounded) prescription drug for the patient was available.

31. The prescribing physician would be paid either a fixed amount for each prescription authorized, or a percentage of the gross revenue received by Fusion Rx for each prescription as arranged by the marketers and agreed upon by Vahedi and Fusion Rx.

32.     Sometimes the participating physicians and physician assistants would attempt to disguise and conceal the kickbacks and referral payments they were receiving by having Fusion Rx, Vahedi, or their marketing companies and "sales reps" pay referral fees to loosely related or trusted individuals, instead of directly to the participating physician/physician assistant.

33.     Instead of providing compounded medication prescriptions directly to beneficiaries, who would then be free to select a pharmacy, the "marketers," including, but not limited to, Defendants Podolak, Kieffer, Bauman and Peter l/n/u, would deliver the prescriptions directly to Fusion Rx for dispensing either personally or via facsimile.

34.     The physicians and their staff would prescribe and cause to be prescribed compounded medications to be dispensed at Fusion Rx for federal healthcare program beneficiaries who typically would fall into one of three general categories: (1) beneficiaries who had their personally identifying health information misappropriated and used for compounded pain and other medications prescriptions without their knowledge or consent; (2) beneficiaries who had an existing patient/physician relationship with a prescribing physician/physician assistant, but who never discussed or requested a compounded pain or other medication; or (3) beneficiaries who discussed compounded pain medications with their physicians/physician assistant but who did not have a medical need for such a prescription, as opposed to an analogous FDA-approved drug.

35.     Defendant Vahedi, in furtherance of the fraud, regularly waived required copayments for the compounded drugs and often bribed customers with gift cards.

36.     When Relator conducted audits in order to attempt to recoup payments for some of these drugs, Fusion Rx and Vahedi directed Relator to refrain from direct contact with purported prescribing medical providers, instead to rely on the "marketers" to provide supporting payment information.  Some of the data provided by the defendants pursuant to these audits included forged prescriptions, forged medical records, and sham patient records.

37.     The compounded pain and other medications provided by Fusion Rx often contained false billing data regarding the content of the compound.  In many instances, government healthcare programs were billed for a certain quantity of substances when a review of the mixture revealed that part of the drugs billed to the government were retained by Fusion Rx who overcharged for the quantity of medications actually provided.

## VI.     CAUSES OF ACTION

### COUNT I

**FALSE CLAIMS ACT**
**FALSE CLAIM FOR PAYMENT OR APPROVAL**
**31 U.S.C. §3729(a)(1)(A) and (C) (2010)**

38.     Relator repeats and re-alleges each allegation contained in paragraphs 1 through 37, above as if fully set forth herein.

39.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

40.     Defendants, individually and by and through their officers, agents, employees, related companies, subsidiaries and holding companies,  knowingly presented, or caused to be presented,  false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A)(2010).

41.     Defendants, individually and by and through their officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

42.     As a direct and proximate result of the acts and conduct of Defendants, and each of them, the United States Government reimbursed the Defendants Fusion Rx, Vahedi, their sales reps and the prescribing physicians/physician assistants for compounded pain and other medications which were either not medically necessary, provided to patients without their knowledge or consent, prescribed but not provided to a legitimate patient, provided to the sales rep or a sales reps' family and friends who were not patients or otherwise entitled to the compounded pain or other medication, and

otherwise resulted in the government making payments that it otherwise would not have paid.

43.     Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every patient who was prescribed these compounded pain and other mediations which are different than those properly prescribed represents a false or fraudulent claim for payment.

44.     As a direct and proximate result of the fraudulent and other illegal acts and conduct of defendants, and each of them, as hereinabove alleged, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.  Federal health insurance programs have paid millions of dollars for compounded medications that were not medically necessary, not provided to the patient, not subject to proper copayments, or otherwise improperly billed or provided, that said insurance programs and the United States otherwise would not have paid.

45.     As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 *et seq.* and have thereby damaged the United States Government.  The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than the minimum amount permitted by law during the year of the offense and not more than the maximum amount permitted by law during the year of the offense for each false claim submitted, paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b)   That civil penalties of the maximum amount permitted by law be imposed for each and every false claim that Defendants caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

(c)   That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)   That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)   That the Court award such other and further relief as it deems proper.

## COUNT II

**FALSE CLAIMS ACT**
**FALSE RECORDS OR STATEMENTS**
**31 U.S.C.  §3729(a)(1)(B) and (C) (2010)**

46.   Relator repeats and re-alleges each allegation contained in paragraphs 1 through 45, above as if fully set forth herein.

47.   This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

48.   Defendants, individually and by and through their officers, agents, employees, related companies, subsidiaries and holding companies, knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B) (2010).

49.   As set forth in the preceding paragraphs, Defendants provision of medically unnecessary or incorrect prescriptions defrauded the United States by getting false and/or fraudulent Medicare and other Government healthcare claims paid in violation of 31 U.S.C. § 3729(a)(1)(C) (2010).

50.   Defendants, individually and by and through their officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

51.     As a result of the acts and conduct of Defendants, and each of them, the United States Government reimbursed Defendants Fusion Rx and Vahedi, and the other Defendants, for compounded medicines based upon fraudulent documents resulting in the government making payments it would not otherwise have made.  Every statement, billing and claim for payment submitted to the federal health insurance programs for each and every prescription procured by fraud, as described here, represents a false or fraudulent claim for payment.

52.     As a direct and proximate result of the acts and conduct of defendants, and each of them, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

53.     As set forth in the preceding paragraphs, Defendants have knowingly violated 31 U.S.C. § 3729 *et seq.* and have thereby damaged the United States Government.  The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not less than the minimum penalty set by law for the time of the fraudulent conduct or payment and not more than the maximum penalty provided by law for each false claim submitted, paid or approved.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the United States be awarded damages in the amount of three times the damages sustained by it because of the false claims alleged within this Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* provides;

(b)     That civil penalties of the maximum allowed by law be imposed for each and every false claim that Defendants, and each of them, caused to be presented to the Government Healthcare Programs under the Federal False Claims Act;

(c)     That pre- and post- judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d)     That the Relator be awarded the maximum amount allowed pursuant to the Federal False Claims Act; and

(e)     That the Court award such other and further relief as it deems proper.

## COUNT III

**STARK LAW**
**42 U.S.C. §1395nn(a)(1)**

54.     Relator repeats and realleges each allegation contained in paragraphs 1 through 53, above as if fully set forth herein.

55.     This is a claim for treble damages and penalties under the Stark Law, 42 U.S.C. § 1395nn (g), *et seq.*, as amended.

56.     Defendants, and each of them, individually and by and through their officers, agents, employees, related companies, subsidiaries and holding companies, knowingly made prohibited referrals to Fusion Rx and related physicians/physician assistants and entities for the furnishing of compounded pain and other mediations in violation of 42 U.S.C. § 1395nn (2010).

57.     Defendants, and each of them, individually and by and through their officers, agents, and employees, authorized and encouraged the actions of its various officers, agents, and employees to take the actions set forth above.

58.     As a direct and proximate result of the acts and conduct of Defendants, and each of them, the United States Government reimbursed Fusion Rx for compounded pain and other medications that it otherwise would not have paid.

59.     Every billing for compounded medications by Fusion Rx as a result of the illegal conduct of Defendants, and each of them, represents a prohibited referral.  Each claim for reimbursement for such, submitted to a federal health insurance program, represents an unlawful billing or claim.

60.     As a direct and proximate result of the acts and conduct of Defendants, and each of them, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.  Federal healthcare programs have paid thousands of claims for compounded medicines allegedly provided by Fusion Rx as a result of referrals, fabrications and payments of kickbacks prohibited by the Stark Law. These prohibited claims to federally funded healthcare programs were a foreseeable and intended result of the illegal acts and conduct of Defendants, and each of them, as alleged in this complaint.

61.     As set forth in the preceding paragraphs, Defendants, and each of them, have knowingly violated 42 U.S.C. § 1395nn *et seq*. and have thereby damaged the United States Government.  The United States is entitled to three times the amount by which it was damaged, to be determined at trial, plus a civil penalty of not more than $15,000.00 for each prohibited claim paid or approved, and not more than $100,000.00 for each arrangement or scheme.

62.     As set forth in the preceding paragraphs, Defendants, and each of them, have knowingly violated 42 U.S.C. § 1395nn (f) *et seq*. by failing to report information require by law and thereby damaged the United States Government.  The United States is entitled to $10,000.00 per day for each day for which reporting was required.

WHEREFORE, Relator respectfully requests this Court enter judgment against Defendants, and each of them, as follows:

(a)     That the United States be awarded damages in the amount of three times the damages sustained by the U.S. because of the prohibited referral and claims alleged within this Complaint, as the Stark Law, 42 U.S.C. § 1395nn *et seq.* provides;

(b)     That civil penalties of $15,000.00 be imposed for each and every prohibited bill or claim that Defendants, and each of them, caused to be presented to the Government Healthcare Programs under the Stark Law;

(c)     That other civil sanctions and penalties including reimbursement for all payments made in violation of the Stark Law, $100,000.00 for the scheme and $10,000.00 per day for failure to report;

(d)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case;

(e)     That the Relator be awarded the maximum amount allowed pursuant to the Stark Law and Federal False Claims Act; and

(f)     That the Court award such other and further relief as it deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of the United States and on her own behalf, demands judgment against Defendants, and each of them, as follows:

A.      That Defendants cease and desist from violating 31 U.S.C. §3729 *et seq.*;

B.      That this Court enter judgment against the Defendants, and each of them, in an amount equal to three times the amount of damages the United States Government has sustained because of Defendants' actions, plus a civil penalty of the maximum penalty permitted by law on the date of the offense or judgment for each false claim, together with the costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

C.      That Relator be awarded all costs incurred, including her attorneys' fees;

D.      That, in the event the United States Government subsequently intervenes in this action, Relator be awarded 25% of any proceeds of the claim and that, in the event the United States Government does not intervene in this action, Relator be awarded 30% of any proceeds;

E.      That the United States and Relator receive all relief, both in law and in equity, to which they are entitled.

/ / /

/ / /

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, Plaintiffs and Relator hereby demand a trial by jury.

Dated: May 28, 2019.

Respectfully submitted,

Bijan Esfandiari, Bar No. 223216
besfandiari@baumhedlundlaw.com
Mark Schlein, FL Bar No. 0000700
mschlein@baumhedlundlaw.com
(*Pro Hac Vice to be submitted*)
BAUM HEDLUND ARISTEI & GOLDMAN, PC
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: 310-207-3233
Fax: 310-207-4204

***Attorneys for Relator***

FALSE CLAIMS ACT COMPLAINT